IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JOHNNY HER and RACHEL YANG, | ) | |
| | ) | |
| Plaintiffs, | ) | 2:08-cv-00233-GEB-GGH |
| | ) | |
| v. | ) | ORDER GRANTING DEFENDANT'S |
| | ) | MOTIONS FOR SUMMARY JUDGMENT |
| CAREER SYSTEMS DEVELOPMENT | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

On July 31, 2009, Defendant Career Systems Development Corporation ("Career Systems") filed motions for summary judgment on all claims in Plaintiffs' complaint: (1) marital status discrimination in violation of the California Fair Employment and Housing Act ("FEHA"); (2) race and national origin discrimination in violation of FEHA; (3) religious discrimination in violation of FEHA; (4) harassment in violation of FEHA; (5) wrongful discharge in violation of the public policy embodied in FEHA; (6) retaliation; (7) breach of contract; and (8) breach of the covenant of good faith and fair dealing.

## I.   BACKGROUND

Career Systems contracted with the United States Department of Labor to operate the Sacramento Job Corps Center (the "Center"), a youth training facility which provides a no-cost education and

vocational training program for young people ages 16 through 20. Plaintiff Rachel Yang began working at the Center on September 23, 2003, as a Residential Advisor II ("RA II"). (Yang Statement of Undisputed Facts ("Yang SUF") ¶ 171.) As an RA II, Yang was responsible for working in the female student dormitories. (Yang Dep. 69:9-16.) Yang received a pay raise and promotion to Career Counselor in September 2006. (Yang SUF ¶ 46.) Yang went on medical leave on January 29, 2007, and ceased being a Career Systems' employee on March 2, 2007 after she failed to return to work on March 1, 2007, the date she placed in her leave slip as the date on which she expected to return. (Yang SUF ¶¶ 2, 5, 16.)

Plaintiff Johnny Her began working at the Center on February 21, 2004, as a Residential Advisor I ("RA I"). (Her Statement of Undisputed Facts ("Her SUF") ¶ 42.) Her received a promotion to RA II on February 26, 2005, and a pay raise . (Her SUF ¶ 69.) On May 26, 2006, Her submitted a letter of resignation in which he stated his last day of employment would be June 9, 2006. (Her SUF ¶ 4.) On June 2, 2006, Her was told his resignation was accepted early and that he had to leave the Center immediately; he was then escorted off the premises. (Her SUF ¶ 6.) Her was paid through June 9, 2006. (Her SUF ¶ 7.)

## II.  **ANALYSIS**

### A.  Discrimination

The McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), burden-shifting regime applies to employment discrimination claims brought under FEHA. Loggins v. Kaiser Permanente Intern., 151 Cal. App. 4th 1102, 1109 (2007) ("California follows the burden shifting analysis of McDonnell Douglas Corp. . . . ."); Metoyer v. Chassman,

504 F.3d 919, 941 (9th Cir. 2007) ("California courts apply the Title VII framework to claims brought under FEHA."). Under this burden-shifting regime, the plaintiff bears the initial burden of establishing a prima facie case of discrimination or retaliation. Noyes v. Kelly Serv., 488 F.3d 1163, 1168 (9th Cir. 2007). If Plaintiff satisfies this burden:

> [T]he burden of production shifts to the defendant to articulate a legitimate, [non-discriminatory and] non-retaliatory explanation for the adverse employment action. If the employer rebuts the inference of discrimination and/or retaliation, the burden of production shifts back to the plaintiff to show that the defendant's explanation is merely a pretext for impermissible discrimination or retaliation. Pretext may be shown either (1) directly by persuading the jury that a discriminatory motive more likely than not motivated the employer or (2) indirectly by showing that the employer's proffered explanation is unworthy of credence.

Winarto v. Toshiba Am. Elec. Components, Inc., 274 F.3d 1276, 1284 (9th Cir. 2001) (citations and quotations omitted; emphasis added).

**1.       Rachel Yang's Discrimination Claims**

Yang argues the adverse employment actions on which her discrimination claims are based are her promotion "into a position which was designed to prove too arduous for her," and her termination from employment at the Center. (Yang Opp'n 17:3-4.) Yang also declares she "was afraid the full caseload [she] was given from the start [of the promotion] was an attempt to set [her] up to fail." (Yang Decl. ¶ 37). "An adverse employment action is one that materially affects the compensation, terms, conditions, or privileges of employment." Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008) (citation omitted). "[A]ssigning [an employee] more, or more burdensome, work responsibilities" than other employees may be considered an adverse employment action. Id. Yang has not presented sufficient evidence to establish that her promotion was an adverse

employment action taken against her.  Yang supports her position pointing to her declaration in which she declares her increase in workload occurred only after she received a promotion and pay raise; she also called the promotion a "great opportunity" and her "ultimate goal." (Yang Decl. ¶ 36.)  Yang also relies on the hearsay testimony of her co-worker Joe Pearson, declaring that Pearson told her "he had an easy caseload comparably and would much rather have a full caseload like [Yang's]."  (Yang Decl. ¶ 37.)  It is unclear what Pearson means by these statements, and whether Pearson's position was the same as Yang's position.  Career Systems objects Pearson's statements arguing they are  inadmissible hearsay.  (Def.'s Evid. Obj. 28:25-5.)  This objection is sustained.

Yang's evidence on her promotion consists of her conclusory statement that she had a "full caseload."  However, this conclusory averment lacks "factual data" sufficient to support an inference that her caseload was more burdensome than other employees in her position.  See Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 922 (9th Cir. 2001) (treating plaintiff's conclusory statement unsupported by factual data as insufficient to defeat summary judgment motion).

Further, Yang's statement that her caseload "was an attempt to set [her] up to fail" constitutes "[c]onclusory, speculative testimony . . . [which] is insufficient to raise genuine issues of fact and defeat summary judgment." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  Yang also argues her workload "eventually caused [her] so much stress that she was taken off work by her doctor, and ultimately fired." (Yang Opp'n 17:7-10.)  However, this argument is not supported by evidence.  Since Yang conclusory averments are without factual support, she has not produced

4

sufficient evidence to establish that her promotion was an adverse
employment action.

Yang also argues she was terminated based on discrimination.
Termination "from one's position certainly constitutes an adverse
employment action." Aragon v. Republic Silver State Disposal Inc.,292
F.3d 654, 660 (9th Cir. 2002).  Career Systems counters Yang gave up
her job when she failed to return to work following her leave of
absence.  It is undisputed Yang went on medical leave on January 29,
2007, failed to return to work on March 1, 2007 as stated in her leave
slip, and that Career Systems treated this failure as Yang's
resignation from employment. (Yang SUF ¶¶ 2, 5, 16.)  Before Yang took
leave on January 29, 2007, she filled out and signed a document
entitled "Medical Care and/or Family Care Leave of Absence Form," in
which she stated her leave ended February 28, 2007, and she was to
return to work on March 1, 2007.  (Yang SUF ¶¶ 6, 7; Def.'s Lodgment
of Exs., Ex. 13.)  A condition in the leave slip Yang signed states:
"Failure to return to work on the date specified above, or to have
obtained an approved extension of your leave or have been granted a
personal leave prior to that date, will be deemed your resignation."
(Id.)  In addition, Human Resources Manager Rebecca McClure sent Yang
a letter dated January 30, 2007, which Yang received, in which McClure
informed Yang that Yang had "an expected return date of March 1,
2007."  (Yang SUF ¶ 8; Def.'s Lodgment of Exs., Ex. 14; Yang Dep.
176:24-177:1.)  Yang did not return to work on March 1, 2007, and
failed to inform anyone at Career Systems that she would not be
returning to work until after she was fired; nor did she "make any
effort to contact anyone at the company to inform them of the fact
that [she was] not going to return to work."  (Yang SUF ¶ 16; Yang

Dep. 186:21-187:12.)  On March 2, 2007, McClure sent Yang a letter in which McClure stated Yang was "removed from the payroll effective immediately for failure to return from leave of absence."  (Yang SUF ¶ 8; Def.'s Lodgment of Exs., Ex. 15.)  Career Systems explanation as to why Yang's employment ended shifts the burden to Yang to show that Career Systems' explanation is merely a pretext for impermissible discrimination.

To satisfy her burden, Yang must present evidence showing that Career Systems' explanation for removing her from employment is "unworthy of credence . . . or otherwise not believable," or that she was terminated based on her marital status, race, national origin, and religion.  Noyes, 488 F.3d at 1170.

Yang's religion is Shamanism Hmong.  (Yang SUF ¶ 116.)  She does not recall ever discussing her religion with any other employees, and presents no facts indicating religious discrimination.  (Yang Dep. 212:4-8.).  Therefore, Career Systems' motion is granted on Yang's religious discrimination claim.

Yang and Her have been traditionally married since April 2005, and were legally married in August 2006.  (Yang SUF ¶ 3.)  Yang gave deposition testimony that someone asked her why she and Her were traditionally but not legally married, but Yang does not remember who asked her.  (Yang Dep. 210:23-211:6.)  During Yang's employment with Career Systems, several employees asked both Her and Yang if they were in fact married.  (Yang SUF ¶ 4.)  Yang points to Edward Johnson's declaration, a former Career Systems' employee, in which Johnson declares that Jack Joliff, the Director of Social Development at the Center, told Johnson that if Yang and Her were married, Johnson would "have to get rid of" either Yang or Her for violating Career Systems'

anti-nepotism policy.  (Johnson Decl. ¶¶ 14-15.)  There is no evidence that Career Systems used the anti-nepotism policy as a basis for terminating Yang.  Yang does not present evidence of any derogatory remarks made about her marital status.  (Yang SUF ¶ 4.)  Yang's evidence does not raise a triable issue of fact on the issue whether what she characterizes as her termination was motivated by discrimination based on her marital status.  Therefore, Career Systems' motion is granted Yang's marital status discrimination claim.

Yang describes her ethnicity as Hmong.  (Yang Dep. 39:12-14.)  During her employment at Career Systems, Yang never heard a supervisor make a derogatory comment about Hmong people.  (Yang Dep. 39:17-20.)  The only specific comment potentially offensive to Hmong people Yang recalls is Jack Joliff's statement made in October 2004 that "[Plaintiff] Her hates women.  It must be a cultural thing." (Yang Dep. 40:2-8, Her Decl. ¶ 14.)  However, Yang has failed to demonstrate how this October 2004 statement creates an inference that her asserted termination was motivated by discrimination based on her race, national origin, or ethnicity.

Yang also relies on Zachary Stevenson's declaration, in which he declares that Alan Roberts, director of the Center in 2006 and 2007, made several racially discriminatory statements about African-Americans.  (Stevenson Decl. ¶ 17.)  Specifically, Stevenson declares that Roberts made racist and derogatory statements about two African-American female employees, Betty Bowden and Joany Titherington, and referred to the African-American staff members as "young brothers."  (Id.)  Stevenson also declares that Alan Shoemaker, another member of the management team, patted African-Americans on top of their heads but did not pat Caucasian employees on their heads.

1  (Id.)  Despite the racially derogatory nature of Roberts' comments and

2  Shoemaker's actions, Yang has not shown a nexus between this evidence

3  and her asserted termination sufficient to support an inference that

4  racial animus played a part in her loss of employment at the Center.

5  Therefore, Career Systems' motion is granted on Yang's race, national

6  origin, ethnicity discrimination claim.

7  **2.        Johnny Her's Discrimination Claims.**

8        Her also alleges in the complaint that he was discriminated

9  against on the basis of religion, marital status, race and national

10  origin.  However, Her's opposition brief only addresses an adverse

11  employment action based on Career Systems' early acceptance of his

12  employment resignation.  (Her Opp'n 17:3-7.)  Further, at the hearing

13  on Career Systems' motion, Her's counsel indicated Her has abandoned

14  the pled discrimination claims.  Therefore, Career Systems' motion is

15  granted on Her's marital status, religion, and race and national

16  origin discrimination claims.

17                    **B. Hostile Work Environment**

18        Career Systems also seeks summary judgment on each

19  Plaintiff's claim that he or she was harassed at Career Systems

20  resulting in a hostile work environment.  Harassing an employee

21  because of race and national origin, marital status, religion, or

22  other protected class is an unlawful employment practice under FEHA.

23  Cal. Gov. Code § 12950(h).  To establish a prima facie hostile work

24  environment claim a plaintiff "must raise a triable issue of fact as

25  to whether: (1) she was subjected to verbal or physical conduct

26  because of her [protected class], (2) the conduct was unwelcome, and

27  (3) the conduct was sufficiently severe or pervasive to alter the

28  conditions of [her] employment and create an abusive work

1   environment." <u>Manatt v. Bank of Am.</u>, 339 F.3d 792, 798 (9th Cir.
2   2003).  The environment must be both subjectively and objectively
3   hostile.  <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993).  The
4   proscription against hostile work environments is not a "general
5   civility code"; therefore, "[s]imple teasing, offhand comments, and
6   isolated incidents (unless extremely serious) will not amount to
7   discriminatory changes in the terms and conditions of employment."
8   <u>Manatt</u>, 339 F.3d at 798 (internal quotations omitted).

9          Yang avers she suffered from a hostile work environment
10  because she feared being fired, based on the fact that "she was
11  advised that the questions about [her] marital status were directed at
12  invoking [Career Systems'] anti-nepotism policy."  (Yang Opp'n 19:22-
13  25.)  Yang also presents Edward Johnson's declaration, in which
14  Johnson declares that Jack Joliff told Johnson that if Yang and Her
15  were married, Johnson would "have to get rid of" either Yang or Her
16  for violating Career Systems' anti-nepotism policy.  (Johnson Decl. ¶¶
17  14-15.)  Yang also argues her hostile work environment claim is
18  supported by the Human Resources Manager's statement made to her
19  husband that "maybe this culture is not for you," arguing that this
20  statement "suggest[s] that a minority is unfit for the 'white'
21  culture."  (Yang Opp'n 19:27-28.)  Even assuming this statement was
22  intended as a racially offensive remark, Yang has not presented
23  evidence showing a "severe and pervasive" work environment.  <u>See</u>
24  <u>Manatt</u>, 339 F.3d at 799 n.6 (holding that co-workers' jokes about a
25  "China man," teasing based on word mispronunciation, and gesture in
26  which they pulled their eyes back to mock the appearance of the
27  plaintiff were not enough to create a hostile work environment);
28  <u>Vasquez v. County of Los Angeles</u>, 349 F.3d 634, 642 (9th Cir. 2003)

(holding that supervisor's isolated comments that plaintiff had a "typical Hispanic macho attitude" and that he should consider transferring because "Hispanics do good in the field" were not severe or pervasive enough to alter the terms and conditions of employment).

Her also argues his fear of termination due to questions regarding his marital status created a hostile work environment. However, Her does not present evidence showing that the reason he has this fear is that he has been subjected a hostile work environment. See Carmen v. San Francisco Unif. Sch. Dist., 237 F.3d 1026, 1028 (9th Cir. 2001) ("A plaintiff's belief [stated in her deposition] that a defendant acted from an unlawful motive, without evidence supporting that belief is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive."). Since both Her and Yang have failed to raise a triable issue of material fact that they were subject to a hostile work environment Career Systems' motions are granted on these claims.

## C.   Retaliation

Career Systems seeks summary judgment on each Plaintiff's retaliation claim. To establish a prima facie case of retaliation, a plaintiff must show: (1) involvement in a protected activity, (2) an adverse employment action, and (3) a causal link between the two. Vasquez, 349 F.3d at 646. "Causation sufficient to establish the third element of the prima facie case may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987).

//

1.        **Yang's Retaliation Claim**

Yang asserts her retaliation claim is based on the following protected activities: her attendance at NAACP meetings beginning in summer 2004 and a discrimination complaint she filed with Career Systems' Equal Employment Opportunity ("EEO") Officer in November 2004. (Yang Opp'n 21:3-4; Yang Decl. ¶¶ 11, 15, 18.)  Yang argues she suffered the following adverse employment actions in retaliation for participating in these protected activities: denial of a promotion, "the threat of being terminated for being married," promotion to a position more complex than her co-workers, and termination while on disability leave. (Yang Opp'n 21:4-8.)  An adverse employment action in the retaliation context is "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity." Poland v. Chertoff, 494 F.3d 1174, 1180 (9th Cir. 2007).

Yang supports her position that she was justified in fearing she would be terminated for being married by relying on Edward Johnson's declaration, in which Johnson declares that Jack Joliff, the Director of Social Development at the Center, told Johnson that if Yang and Her were married, Johnson would "have to get rid of" either Yang or Her for violating Career Systems' anti-nepotism policy. (Johnson Decl. ¶¶ 14-15.)  Yang also presents evidence that various Career Systems employees asked her and Her whether they were married, and that employees in the Center's human resources department stated Yang had to update her marital status in her personnel file.  Yang's evidence is insufficient to establish that Career Systems' inquiry about her marital status constitutes an adverse employment action.

Nor is Yang's evidence about her promotion an adverse employment action.

Yang also argues that she had earlier promotion denials which constitute adverse employment actions. Before Yang was promoted in September 2006, she was denied promotions in April 2004, May 2004, and September 2005. (Yang Decl. ¶¶ 6, 8.) Since the April and May 2004 promotion denials occurred before Yang attended NAACP meetings or filed her EEO Complaint, they cannot be retaliation for participation in those activities. When Yang was denied a promotion in September 2005, she was told by the interviewers, Jack Joliff and Erica Evans, that she was not qualified because she had minimal case management experience, and her degree in Musical Therapy was not sufficient for a social services related position. (Yang Decl. ¶ 31.) Even assuming Yang has established a prima facie case that the denial of the September 2005 promotion was retaliatory, she has not presented evidence creating an issue of material fact as to whether Career Systems' reasons for denying Yang the promotion were pretextual for retaliation.

Nor has Yang has presented evidence indicating her termination in March 2007 was causally related to her attendance at NAACP meetings beginning in summer 2004 or her filing of an EEO complaint in November 2004. See Loggins, 151 Cal. App. 4th at 1110 n.6 (finding that plaintiff employee had failed to present evidence sufficient to permit an inference of a causal nexus when the adverse employment action followed nine months after a protected activity, "particularly when the protected conduct [was] first followed by non-adverse actions ([there], a good performance rating and a pay raise) before a later adverse action occurs"). Even assuming Yang could

1  establish her prima facie case, she cast doubt on Career Systems'
2  explanation that she is no longer employed by Career Systems because
3  she failed to return from her leave on March 1.  Therefore, Career
4  Systems' motion is granted as to Yang's retaliation claim.

5  **2.      Her's Retaliation Claim**

6  Her asserts his retaliation claim is based on the following
7  protected activities: his attendance at NAACP meetings beginning in
8  summer 2004, his discrimination complaint filed in November 2004, and
9  his formal written complaint filed on January 18, 2006 in response to
10  an October 2005 altercation with a co-worker.  (Her Opp'n 12:21-23,
11  19:10-12.)  Her argues he suffered the following adverse employment
12  actions in retaliation for participation in these protected
13  activities: "Human Resources attempt[ed] to get his evaluation
14  downgraded," the fear of being terminated for being married, denial of
15  his statutory right to family bonding leave, loss of his computer,
16  having his complaint of harassment by a co-worker ignored, being
17  constructively terminated, and being escorted off the premises by Jack
18  Joliff.  (Her Opp'n 19:13-17.)

19  Her's fear of being fired because of his marital status is
20  not an adverse employment action.  Nor has Her demonstrated that
21  questions regarding his marital status constitute is an adverse
22  employment action, or a pretext for retaliation because of Her's
23  engagement in protected activity.  Therefore, Career Systems' motion
24  is granted on this portion of Her's retaliation claim.

25  Her has also failed to establish that he suffered an adverse
26  employment action by "having his complaint of harassment by a co-
27  worker ignored."  Her avers that on October 11, 2005, Career Systems'
28  residential adviser Cathy Garcia argued with Her about a vacuum

cleaner that had not been put away properly by a trainee, and that during the argument Garcia shouted at Her, "I hate you, I hate working with you, I hate seeing you every day." (Her Decl. ¶ 35.)  Garcia never made any derogatory remarks regarding Her's religion, race, national origin, or marital status. (Her Dep. 116:23-117:10.)  Her reported the incident to his supervisors and now argues that his complaint was ignored.  However, on October 13, 2005, Her, Garcia, Jack Joliff, and another supervisor met to discuss the altercation. (Her Dep. 120:10-15.)  At the meeting, Garcia was given an oral warning for her actions; she agreed she had jumped to conclusions regarding the vacuum incident; and she agreed not to make any disrespectful comments in the future.  (Ex. 16.)  Her does not recall having any further issue with Garcia.  (Her Dep. 127:13-24.)  Her later submitted a written complaint expressing his dissatisfaction with Career Systems' handling of the situation, to which the Center Director responded with a letter explaining that Garcia was warned and that she had apologized.  (Ex. 21; Her Dep. 126:24-127:3.)  Therefore, Her's claim that the incident was ignored is without merit, and Her's mere dissatisfaction with the level of Garcia's punishment is not an actionable adverse employment action.  Further, even if Her could establish that Career Systems' handling of the complaint was an adverse employment action, he has not presented evidence showing that it was causally related to any of his protected activities, or that Career Systems' explanation of how it handled the incident was pretextual retaliation.  See generally, Loggins, 151 Cal. App. 4th at 1111-12 (stating that employer is not required to demonstrate that its procedures were "fairly administered" in order to shift the burden back to the employee as long as the employer demonstrates a facially

valid and specific basis for its actions).  Therefore, Career Systems'
motion is granted on this portion of Her's retaliation claim.

Her also argues he suffered an adverse employment action
when human resources attempted to have his performance reviews
downgraded.  Her supports his position citing Zachary Stevenson's
averment, Her's supervisor, that human resources employee Deana Gelman
reviewed Her's performance evaluation, then "wrote 'too high' on the
evaluation . . .[,] and demanded justification for the high marks."
(Stevenson Decl. ¶ 11.)  Stevenson further declares "I had never had
this happen with a Caucasian employee and I believe they were
targeting Mr. Her."  (Id.)  It is unclear when this occurred, and
whether the demand for justification was actually an attempt to have
Her's performance review downgraded.  But Her shown this attempt was
related to any protected activity.  It is undisputed that Her was
never disciplined, demoted, or denied a promotion when he was a non-
probationary employee at Career Systems.  (Her SUF ¶¶ 38, 39.)
Stevenson's mere belief that Her was being "targeted" by Gelman's
request for justification of the high marks is not sufficient to raise
a triable issue of fact on the issue whether Gelman's request was
pretextual retaliation for Her's participation in a protected
activity.  Therefore, Career Systems' motion is granted on this
portion of Her's retaliation claim.

Her also argues he suffered an adverse employment action
when a dormitory computer was removed from the staff office that he
used.  Her presents an email exchange between Jack Joliff and Edward
Johnson in which it is stated that as of February 18, 2005, two
computers were removed from two dormitories for "repeated violations"
and abuse of the computers after "many warnings."  (Johnson Decl., Ex.

18.)  It is undisputed that the computers were used by several staff members and the removal prevented all employees, not just Her, from using the computers.  (Her Dep. 111:15-24.)  Further, one week after the removal of the computers, Her received a pay raise and a promotion.  Further, Her has not demonstrated how the removal of the computer is causally related to his participation in any protected activity, or that Career Systems' stated reason for removing the computers was a pretext for retaliation.  Therefore, Career Systems' motion is granted on this portion of Her's retaliation claim.

Her also asserts Career Systems' denial of his family bonding leave constitutes retaliation.  It is undisputed that Her's request for family bonding leave was denied on July 13, 2005, but was granted "a couple of days" later.  (Her SUF ¶ 51; Her Dep. 38:12-21.)  Even if the temporary denial of Her's bonding leave is considered an adverse employment action, Her has failed to establish a causal link between the denial and his participation in a protected activity.  The July 13, 2005 denial could not be retaliation for Her's later January 18, 2006 complaint regarding his altercation with Garcia, and Her has presented no evidence that the denial was in retaliation for his attendance at NAACP meetings beginning in summer 2004 or the filing of his discrimination complaint in November 2004.  Therefore, Career Systems' motion is granted on this portion of Her's retaliation claim.

Her also argues Career Systems retaliated against him by escorting him off the Center premises on June 2, 2006.  At the hearing on the motion, Her withdrew this incident as a basis for a discrimination claim, but it is unclear whether he also withdrew this incident as a basis for his retaliation claim.  Regardless, Her has failed to show how this incident constitutes an adverse employment

action.  It is undisputed that after Her found a higher paying job
with the County of Sacramento, Her submitted a letter dated May 26,
2006, to Career Systems in which he stated his last day of employment
would be June 9, 2006.  (Her SUF ¶¶ 4, 5; Def.'s Lodgment of Exs., Ex.
17.)  It is also undisputed that on June 2, 2006, Her was told his
resignation was accepted early, that he was to leave the premises
immediately, and that Joliff then escorted him off the premises.  (Her
SUF ¶ 6.)  It is further undisputed that Her was paid through June 9,
2006.  (Her SUF ¶ 7.)  Her has pointed to no evidence that the early
acceptance of his resignation and being escorted off the premises,
were retaliation for any protected activity.  Therefore, Career
Systems' motion is granted on this portion of Her's retaliation claim.

Her also argues he was constructively discharged in
retaliation for engaging in the protected activities.  "In order to
amount to a constructive discharge, adverse working conditions must be
unusually aggravated or amount to a continuous pattern before the
situation will be deemed intolerable."  Turner v. Anheuser-Busch,
Inc., 7 Cal. 4th 1238, 1247 (1994).  "In general, single, trivial, or
isolated acts of misconduct are insufficient to support a constructive
discharge claim."  Id. (citation omitted).  Her has not shown he was
"subjected to working conditions rendering [his] job so intolerable
that a reasonable person would have felt compelled to resign."  Id.
Therefore, Career Systems prevails on its motion for summary judgment
of Her's retaliation claim.

### D.  Wrongful Discharge in Violation of Public Policy

Career Systems also seeks summary judgment on each
Plaintiff's wrongful discharge in violation of public policy claim.
Plaintiffs allege in their complaint they were "constructively

17

terminated from their positions" because of ongoing discrimination and harassment to which they were subjected.  (Compl. ¶ 78.)  The FEHA claims on which Career Systems has prevailed on its motion "constitute[] [the underlying public policies in Plaintiffs' claims for] wrongful termination of Plaintiffs[] in violation of public policy embodied in FEHA." (Compl. ¶ 79.)  Each plaintiff's constructive termination claim is based on the same evidence involved in those claims.

To succeed on a wrongful discharge in violation of public policy claim, a plaintiff must have been wrongfully discharged in violation of a policy "delineated in either constitutional or statutory provisions." City of Moorpark v. Superior Court, 18 Cal. 4th 1143, 1159 (1998).  "[T]he common law cause of action cannot be broader than the constitutional provision or statute on which it depends." Id.  Since the underlying FEHA claims fail, any claim for wrongful discharge in violation of the public policy embodied in those claims fails.  See, e.g., Loggins, 151 Cal. App. 4th at 1108-09 (analyzing FEHA claim and wrongful discharge in violation of the public policy together).

Yang also argues she was wrongfully discharged in violation of the public policy against disability discrimination. The California Supreme Court has held that "disability discrimination can form the basis of a common law wrongful discharge claim." City of Moorpark, 18 Cal. 4th at 1161.  The Court stated, "FEHA is just one expression of a much broader policy against disability discrimination that appears in a variety of legislative enactments." Id. at 1159.  Yang's complaint alleges only a violation of public policy "embodied in FEHA." (Compl. ¶ 78.)  Even assuming Yang has established a prima facie case of

disability discrimination under FEHA, she has not offered evidence that Career Systems' explanation that she was longer an employee because she failed to return from her leave of absence, was a pretext for wrongful discharge in violation of the public policy against disability discrimination.  Therefore, this claim does not survive Career Systems' motion.

Finally, Yang and Her's respective evidence does not indicate they were constructively discharged in violation of public policy.  "In order to amount to a constructive discharge, adverse working conditions must be unusually aggravated or amount to a continuous pattern before the situation will be deemed intolerable." Turner v. Anheuser-Busch, Inc., 7 Cal. 4th 1238, 1247 (1994).  "In general, single, trivial, or isolated acts of misconduct are insufficient to support a constructive discharge claim." Id. (citation omitted).  Neither Yang nor Her has presented evidence of having been "subjected to working conditions rendering [their] job[s] so intolerable that a reasonable person would have felt compelled to resign." Id.

Therefore, Career Systems' motion is granted on each Plaintiff's wrongful discharge claim.

### E.  Breach of Contract Claims

Career Systems also seeks summary judgment on each Plaintiff's breach of contract and breach of covenant of good faith and fair dealing claims (the "breach of contract claims").  Plaintiffs' complaint did not specify which contract Career Systems allegedly breached.  Her withdrew his breach of contract claims in his Opposition "and accedes to partial summary judgment" on those claims. (Her Opp'n 21:21-24.)

Yang argues Career Systems breached the Collective Bargaining Agreement ("CBA") between Career Systems and the teachers' union.  Specifically, she argues Career Systems breached "Article IV, the non-discrimination clause which prohibits discrimination on the basis of, *inter alia*, disability." (Yang Opp'n 23:16-17.)  However, Yang's breach of contract claims are preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.  "Section 301 completely preempts any state causes of action based on alleged violations of contracts between employers and labor organizations." Ramirez v. Fox Television Station, Inc., 998 F.2d 743, 747 (9th Cir. 1993).  Yang's state law breach of contract claims allege Career Systems breached the CBA and are thus preempted by the LMRA. "Generally, a bargaining unit employee may not bring an action for breach of the collective bargaining agreement unless [she] has exhausted the contractual grievance procedures." Jackson v. Southern California Gas Co., 881 F.2d 638, 646 (9th Cir. 1989) (citing Republic Steel Corp. v. Maddox, 379 U.S. 650, 652-53 (1965) (stating "federal labor policy requires that individual employees wishing to assert contractual grievances must attempt use of the contract grievance procedure agreed upon by the employer and union as a mode of redress.")).  "The employee, however, may obtain judicial review of [her] claim despite [her] failure to exhaust contractual remedies if [she] can show that the union breached its duty of fair representation." Id.  Yang does not allege a claim of breach of the duty of fair representation in her complaint and has not named the union as a defendant.  Further, Yang has not exhausted the five-level grievance procedure found in the CBA.  (Def.'s Mot. for Summ. J., Ex. 7 at 36.)  Since Yang's breach of contract claims are preempted by

20

section 301 of the LMRA and she has failed to exhaust the grievance procedures contained in the CBA, Career Systems' motion is granted on Yang's breach of contract claims.

### III.   <u>CONCLUSION</u>

Since Career Systems' motion for summary judgment is granted on all claims, judgment shall be entered in favor of Defendant.

Dated:   December 11, 2009

_____
GARLAND E. BURRELL, JR.
United States District Judge